UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | ) | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Criminal No. 18-cr-00267-01, -06 (APM) |
| **ANTHONY FIELDS, et al.,** | ) ) | |
| Defendants. | ) ) | |

# MEMORANDUM OPINION AND ORDER

On February 1, 2018, law enforcement executed a search warrant on a two-story building located at 2408 Martin Luther King, Jr. Avenue, S.E., in Washington, D.C. ("the Premises"). Inside officials found and seized various types of narcotics in distribution-level quantities, multiple weapons, and items used to weigh, prepare, and package narcotics for sale. Two Defendants—Anthony Fields and Lonnell Tucker—now move to suppress that evidence. Defendants raise a host of reasons why the court should suppress the evidence, but none have merit. For the reasons that follow, Defendants' motions are denied.

I.

At the most general level, Defendants argue that the warrant is deficient because it authorized law enforcement to search the Premises as an indivisible whole, when in fact the Premises is two "separate structures."[1] Defendants' "separate structures" argument is based on

---

[1] As a threshold matter, the government argues that Defendants do not have "standing" to move to suppress because they lacked a reasonable expectation of privacy in the second floor of the Premises, which the government analogizes to a "stash house." Gov't's Omnibus Resp., ECF No. 95 [hereinafter Gov't Resp.], at 20–23. "Standing" for purposes of the Fourth Amendment is not a jurisdictional prerequisite. *See United States v. Sheffield*, 832 F.3d 296, 304 (D.C.

the fact that first floor of the Premises houses a commercial enterprise—a barbershop—and the second floor contains a warren of rooms that Defendants assert are residential in character. The barbershop and the second floor are accessible by two different entrances. There is a door to the barbershop that opens directly onto the sidewalk, and there is a separate "red door" that leads to the second floor that also opens directly onto the sidewalk. *See* Def. Fields' Mot. to Suppress Search Warrant, ECF No. 69 [hereinafter Def.'s Mot.], at 13–14[2]; Def.'s Tucker's Mot. to Adopt, ECF No. 76. Defendants argue that "[t]o say that probable cause exists to search the adjacent property merely by virtue of evidence regarding the barbershop allows the government to sidestep the [] requirement of specificity and the duty to ensure probable cause exists as to each specific location to be searched." Def.'s Mot. at 13–14. Stated differently, according to Defendants, law enforcement should have obtained two separate warrants, one for the barbershop and one for the second floor.

Defendants' argument suffers from two problems. For starters, it rests on the false premise the second-floor rooms constitute a separate "place to be searched" for purposes of the Fourth Amendment. U.S. Const. amend. IV. All the evidence is to the contrary. According to the warrant affidavit, the Premises is identified by one address—2408 MLK, Jr. Ave., S.E.— and is owned as a unitary whole by a single person. *See* Gov't Resp., Ex. 1, ECF No. 95-1 [hereinafter Gov't Ex.], at 42 ¶ 42. The Premises is zoned for a business purpose. *See id.* And the electric utility, PEPCO, bills "for the entirety" of the Premises. *See id.* In addition, a photograph of the Premises shows it to be a two-story brick building with only one set of numerals—"2408"—appearing on the façade. *See id.* at 5. These facts are unchallenged. To be sure, the Premises has two different doors, each

---

Cir. 2016). The court therefore can assume, without deciding, that Defendants have standing and proceed to the merits of their arguments.

[2] All page citations in this Memorandum Opinion are to the electronic page numbers generated by CM/ECF.

of which opens directly onto the sidewalk—one for the barbershop and one for the second floor—but that feature alone, without more, does not establish separate "places" for purposes of the Fourth Amendment. Defendants cite no authority and present no facts that would cause the court to conclude otherwise. Accordingly, law enforcement did not violate the Fourth Amendment by seeking only a single warrant for the Premises.

Even if each floor of the Premises did demand its own warrant, the "good faith" exception would foreclose suppression. *See United States v. Leon*, 468 U.S. 897, 913, 920–22 (1984). The magistrate judge signed a warrant for the entirety of the Premises and, absent an applicable exception, law enforcement was entitled to rely on that determination. *See id.* Defendants seek to rebut the good-faith exception in two ways. First, they argue that the affidavit contains a dishonest statement about the Premises, and they ask the court to hold an evidentiary hearing to consider the alleged dishonesty, i.e., a *Franks* hearing. *See* Def. Fields' Reply to Gov't Resp., ECF No. 104 [hereinafter Def.'s Reply], at 10–11, 15. *See Leon*, 468 U.S. at 926 (stating that the good-faith exception does not apply if "the officers were dishonest or reckless in preparing their affidavit"). Second, they contend that the warrant was overbroad insofar as it sweeps in the second floor of the Premises, and a reasonable officer would have understood, based on the facts presented in the affidavit, that the Premises was in fact two separate places requiring separate warrants. Def.'s Reply at 6–11, 14. *See Leon*, 468 U.S. at 926 (stating that the good-faith exception does not apply where officers "could not have harbored an objectively reasonable belief in the existence of probable cause"); *United States v. Griffin*, 867 F.3d 1265, 1278 (D.C. Cir. 2017) (declining to apply good-faith exception to obviously overbroad warrant). Neither of these exceptions to the good-faith principle applies.

As to the first, Defendants claim that the affiant "recklessly disregarded the truth" when she wrote by hand on the affidavit that "no additional businesses *or residences* have been identified [as being inside] Premises-1." Def.'s Mot. at 10 (citing Gov't Ex. at 42 ¶ 43 (emphasis added)). Apparently, the affiant added this sentence following an inquiry from the magistrate judge. *See* Gov't Resp. to Def.'s Reply, ECF No. 108, at 3. The suggestion seems to be that the affiant deceived the magistrate by not identifying "a locked residential premises adjacent to the barbershop"—in other words, that the second floor was a residential space. Def.'s Mot. at 10. But there is nothing evidently false or misleading about the affiant's statement. Defendants offer no evidence to establish that anyone used the second floor as a "residence." Indeed, Defendant Fields admits that he used the second floor, at most, "to store objects, such as condoms and a mattress, . . . for his personal recreational use." *Id.* at 5. Additionally, even if anyone did use one of the rooms as a residence, Defendants supply no proof that law enforcement was aware, or should have been aware, of such use. Indeed, based on an inquiry of the Premises' lessee and a government-records search, law enforcement had reason to believe that the Premises was zoned only for commercial use. *See* Gov't Ex. at 42 ¶ 42. There is simply no evidence before the court that would support applying the dishonesty/recklessness-disregard exception of *Leon*. For the same reason, Defendants are not entitled to a *Franks* hearing. *See Franks v. Delaware*, 438 U.S. 154, 155–56, 171 (1978) (stating that a hearing is warranted only if the defendant "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant," and that such allegation must be "accompanied by an offer of proof").

Defendants' second argument for why this search falls outside of *Leon* is related to the first. They contend that "the affidavit in this case was so facially deficient in failing to particularize

the place to be searched, that the executing officers could not have reasonably presumed it to be valid as to the adjacent premises that was clearly not operated as a commercial location, or a barbershop." Def.'s Mot. at 14. The court understands Defendants to argue that the warrant was overbroad because it included the second floor as part of the Premises, and any reasonable officer would have understood that the second floor was a separate location requiring its own warrant. The court already has found that the Premises was a single "place" for purposes of the Fourth Amendment, so this argument does not even get out of the starting block. But even if the court is wrong, Defendants have not come forward with evidence, or identified a defect in the affidavit, that would have put a reasonable officer on notice that the second floor required a warrant of its own to conduct a search. The good-faith exception therefore applies.

II.

Next, Defendants maintain that the warrant is not supported by probable cause to justify a search of the second floor. This contention takes multiple forms. Defendants argue that the search warrant affidavit (1) "fail[s] to connect the controlled buys [to] the 'red door' residence at all," Def.'s Reply at 13; (2) presents "no evidence . . . that a gun, or guns, would be located" there, *id.*; (3) offers no evidence that the second floor "is the scene of drug activity," *id.* at 14; and (4) lacks a description of "any actual criminal activity observed" in relation to the second floor, *id.* at 15. None of these claims is borne out by a close reading of the affidavit.

For starters, the proper question is not whether law enforcement had probable cause to believe that the second floor would contain evidence of drug trafficking and other criminal activity, but whether the Premises *as a whole* would yield such evidence. The warrant sought, and was issued, to search the entire Premises. As to that question, there was ample evidence of drug trafficking occurring in and near the barbershop to justify the search warrant. Indeed, on six dates

5

in the summer of 2017, a confidential informant working for law enforcement ("CI") made or attempted to make narcotics purchases from persons who operated in and near the barbershop. *See* Gov't Ex. at 25–32 ¶¶ 10–19. Those events alone provided probable cause to search the Premises.

Even if specific evidence is needed to tie the second floor to both drug activity and Defendant Fields, the affidavit provides it. During the controlled buy that occurred on June 22, 2017, the CI informed law enforcement that an unknown male entered the red door and returned with three zips of narcotics, which the CI purchased for $60. *See id.* at 27–29 ¶¶ 12–15. Officers also observed the unknown male enter the red door on that date and return with money in his hands. *See id.* at 28 ¶ 14. This transaction alone establishes that the second floor was a probable location used to store narcotics. Additionally, law enforcement had reason to suspect Fields was carrying out drug activities on the second floor. On November 28, 2017, law enforcement in Prince George's County arrested Fields for possession with intent to distribute cocaine, after recovering 83 grams of suspected cocaine and $7,300 in U.S. currency from his person and a car in which he was the sole occupant. *See id.* at 36 ¶ 29. Fields did not reside above the barbershop. *See id.* at 21–22 ¶ 35. Yet, within days of his arrest, on November 30, 2017, law enforcement observed Fields with a key opening the red door and remaining inside for a period of time, *see id.* at 30 ¶ 30; and then made the same observations again on December 29, 2017, *see id.* at 21 ¶ 34; and, January 18, 2017, *see id.* at 22 ¶ 37. Given the substantial evidence of narcotics trafficking in and near the barbershop, the suspected retrieval of narcotics from the second floor during a controlled buy, and Fields' recent arrest for trafficking, law enforcement marshalled enough evidence to establish probable cause that the second floor would contain evidence of narcotics trafficking and that Fields was connected to such activity.

Even if this evidence falls short of probable cause, the good-faith exception once more applies. A magistrate judge authorized a search of the entire Premises, including the second floor. Defendants do not argue that the affiant was "dishonest or reckless" in establishing that narcotics trafficking was taking place at the Premises, including on the second floor. *Leon*, 469 U.S. at 926. To the extent they contend that a reasonable officer "could not have harbored an objectively reasonable belief in the existence of probable cause" to search the second floor, the foregoing evidence shows otherwise. *Id.* The good-faith exception therefore applies, even if the evidence to justify a search ultimately is deemed to come up short.

III.

For the foregoing reasons, Defendants' motions to suppress evidence seized from the Premises, including their request for a *Franks* hearing, are denied.

Date: February 1, 2019

Amit P. Mehta
United States District Judge