# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal No. 18-cr-00267-01, -02, |
| | ) | -04, -05, -06 |
| ANTHONY FIELDS, et al., | ) | (APM) |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

### I.

This Memorandum Opinion and Order addresses the government's pending motions to admit evidence of prior convictions and bad acts under Federal Rules of Evidence 404(b) and 609, and the oppositions thereto.[1] In addressing the government's motions, the court proceeds as follows. First, the court addresses the prior gun-related convictions that the government seeks to admit or use against Defendants Fields and Samuels. Next, the court considers the various drug-related convictions and conduct that the government proposes to admit or use against each Defendant. And, finally, the court tackles the government's request to use Defendant Samuels' conviction for aiding and abetting manslaughter under Rule 609 should he testify.

---

[1] The pleadings relevant to these motions are as follows: (1) Government's Motion Regarding Rule 609 Admissibility, ECF No. 49 [hereinafter Gov't Rule 609 Mot.]; (2) Government's Motion Regarding Rule 404(b) Admissibility, ECF No. 65 [hereinafter Gov't Rule 404(b) Mot.]; (3) Defendant Samuels' Response to Government's Motion Regarding Rule 609 Admissibility, ECF No. 89; (4) Defendant Hamilton's Response in Opposition to Government's Motion to Introduce 404(b) Evidence, ECF No. 87; (5) Defendant Samuels' Response to Government's Motion Regarding Rule 404(b) Admissibility, ECF No. 88 [hereinafter Samuels' Resp.]; (6) Defendant Tucker's Motion in Opposition to Government Motion for Leave to Admit Evidence, ECF Nos. 102, 110; (7) Government's Reply to Defendants' Oppositions to the Government's Motions Regarding 404(b) and Rule 609 Admissibility, ECF No. 99; (8) Defendant Fields' Response to the Government Motions Regarding 404(b) & 609 Admissibility, ECF No. 105.

II.

A.

It is settled law that, for purposes of Rule 404(b), prior firearm possession by a defendant is probative of his knowledge and intent to possess a weapon when the theory of prosecution is one of constructive possession. *See United States v. McCarson*, 527 F.3d 170, 173 (D.C. Cir. 2008); *United States v. Garner*, 396 F.3d 438, 442–44 (D.C. Cir. 2005); *United States v. Cassell*, 292 F.3d 788, 792–95 (D.C. Cir. 2002); *cf. United States v. Linares*, 367 F.3d 941, 946–948 (D.C. Cir. 2004) (holding that prior gun possession evidence has little or no probative value where the evidence shows that the defendant actually possessed the weapon). The D.C. Circuit has said that the probative value of a prior weapons offense in such cases is "high." *See Cassell*, 292 F.3d at 796. To prove constructive possession, the government will have to show that the defendant had *knowing* dominion and control over the gun. *See Garner*, 396 F.3d at 443. That requirement is "heightened" in cases, such as this one, where the evidence is likely to be that others had access to the locations where law enforcement found the weapons—in Fields' case, on the second floor above the barbershop, and in Samuels' case, his residence. *Id.* Therefore, the probative value of Defendants' prior acts of gun possession is significant.

The question remains whether the probative value of the prior gun possessions is substantially outweighed by the danger of unfair prejudice under Rule 403. *See Cassell*, 292 F.3d at 796. To be sure, the gun offenses here are old—16 years for Mr. Fields' two convictions (2001-FEL-6917 (D.C. Super. Ct.) and 2001-FEL-3831 (D.C. Super. Ct.)) and 23 years for Mr. Samuels' offense (1994-FEL-6422 (D.C. Super. Ct.)), *see* Gov't Rule 404(b) Mot. at 15–16, 18; Gov't Rule 609 Mot. at 3. But staleness in this instance does not create the kind of *unfair* prejudice that would *substantially* outweigh the evidence's "high" and "heightened" probative value. Samuels relies

on *United States v. Sheffield* to support the proposition that the age of his weapons conviction diminishes its probative value and heightens its unfair prejudice. *See* Samuels' Resp. at 2 (citing *Sheffield*, 832 F.3d 296 (D.C. Cir. 2016)). *Sheffield*, however, involved the admission of a prior drug trafficking conviction, not gun possession. That distinction is material, because prior drug trafficking convictions are admissible to show that a person "knew how to get drugs, what they looked like, where to sell them, and so forth." *United States v. Crowder*, 141 F.3d 1202, 1208 n.5 (D.C. Cir. 1998). The logic underlying the staleness finding in *Sheffield* is that knowledge of the drug trade will fade over time, such that the more remote the prior conviction the less probative it will be of a defendant's present knowledge of drug trafficking. *See Sheffield*, 832 F.3d at 307–08 ("Moreover, by telling the jury only about the fact of a decade-old conviction, the evidence bore little evidentiary relevance to the question of Sheffield's knowledge in 2011 about such matters as how to acquire or to market PCP."). That same rationale does not, however, apply to prior gun possessions. The age of a prior weapons offense does not diminish one's present knowledge or intent to exercise dominion and control over a gun. In other words, evidence of knowledge and intent relating to constructive possession of a gun does not have the same temporal quality as knowledge of the drug trade. The staleness of a prior possessory gun conviction therefore does not warrant exclusion of evidence that, according to the D.C. Circuit, has significant probative value. Accordingly, the government will be permitted under Rule 404(b) to present evidence of Fields' and Samuels' prior gun possession offenses in its case in chief.

The court's ruling comes with a caveat. The government may introduce only the possessory aspect of Defendants' prior conduct, including the conviction itself (e.g., carrying a pistol without a license), but not the convictions for, or evidence showing, use of a weapon to

3

commit a violent act (e.g., assault with intent to kill while armed, assault with a dangerous weapon). Evidence of prior gun violence *does* risk unfairly prejudicing the jury.

B.

The foregoing limitation, however, applies only to the court's 404(b) ruling. If either defendant takes the stand, the court's calculus for allowing the government to introduce the violent felonies for impeachment under Rule 609 may be different. *See United States v. Lipscomb*, 702 F.2d 1049, 1071 (D.C. Cir. 1983) (drawing a connection between credibility and crimes involving a "conscious disregard for the rights of others"). The court also will have to evaluate Samuels' conviction for assault with a dangerous weapon under a more stringent admissibility standard, as it falls outside of Rule 609's 10-year window. *See* Fed. R. Evid. 609(b). Accordingly, the court defers ruling on the admissibility of these violent-crime convictions until trial.

III.

A.

The court now turns to the admissibility of Defendants' various prior drug trafficking convictions and activities under Rule 404(b). Generally speaking, prior drug trafficking activities are admissible under Rule 404(b) to prove the knowledge and intent elements of a new trafficking charge. *See Sheffield*, 832 F.3d at 307. But, as the D.C. Circuit held in *Sheffield*, the probative value of prior trafficking activity diminishes over time and, if old enough, can give rise to unfair prejudice. *See id.* at 308. In this matter, many of the drug convictions or conduct the government seeks to admit under Rule 404(b) raise staleness concerns. Accordingly, the court must consider the particular prior conduct the government seeks to introduce as to each Defendant.

*Fields*

On March 21, 1998, Fields was arrested for possession with intent to distribute heroin. *See* Gov't 404(b) Mot. at 16. He "was in possession of 19 individual packaged ziplocs of heroin," but the government provides no more information. *See id.* Months later, Fields was sentenced for only possession of heroin. *See id.* This conviction and conduct occurred more than 19 years before the start of the conspiracy in this case, June 2017. Under *Sheffield*, the age of this conviction and conduct diminishes its probative value insofar as Fields' possession of heroin two decades ago would tell the jury little about his knowledge of today's drug trade, and risks resulting in unfair prejudice because of its staleness. The 1998 conviction and conduct therefore is not admissible in the government's case in chief.

Fields' 1992 conviction for trafficking in crack cocaine has even less probative value, and admitting it would risk greater prejudice than his 1998 conviction for heroin possession. That conclusion is underscored by the absence of any details underlying the 1992 conviction and the fact that crack cocaine is not one of the narcotics involved in the charged conspiracy. Fields' 1992 trafficking conviction therefore is not admissible.

The government vigorously argues that the limitations placed on prior trafficking convictions by *Sheffield* does not apply here because Fields was incarcerated for the vast majority of time between the prior drug offenses and the start of the conspiracy period. *See* Gov't 404(b) Mot. at 32. The government points to several other circuit court decisions to support its argument. *See id.* at 32–33 (citing cases). The D.C. Circuit has not addressed whether time in prison between the new case and old crime can essentially inoculate a prior drug conviction from becoming stale. However, in *United States v. Winstead*, the Circuit had this very issue squarely before it but declined to reach it. *See* 890 F.3d 1082, 1086 (D.C. Cir. 2018). Though it passed on the question,

the court in *Winstead* recognized that many circuit courts have agreed with the position the government espouses here. Yet, the court observed: "Although our sister circuits do not explain their reasoning, we think that they are assuming that conversations in prison would refresh a prisoner's knowledge of the modus operandi of drug crimes. We are not sure that is a legitimate assumption in every case." *Id.* (footnote omitted). In view of the doubt the D.C. Circuit in *Winstead* cast on the unstated rationale of other circuit courts, the court declines to embrace those cases here, as the government urges. Accordingly, the court will not discount the staleness of a prior drug conviction because the defendant served time between the old conviction and the new offense.

<u>*Samuels*</u>

None of the concerns articulated with respect to Fields' decades-old trafficking conduct applies to Samuels' April 26, 2018, arrest in Virginia for possession with intent to distribute crack cocaine. Under controlling precedent, that evidence is admissible under 404(b) and the resulting risk of unfair prejudice does not substantially outweigh the evidence's probative value.

<u>*Wright*</u>

On May 25, 2017, Defendant Wright was arrested for selling two pills of heroin to an undercover officer and later convicted for that conduct. Because that offense took place close in time to the charged conspiracy and on the very same block as the barbershop alleged to be the locus of the charged conspiracy, it is admissible. *See United States v. Douglas*, 482 F.3d 591, 601 (D.C. Cir. 2007) (affirming admission of prior trafficking conduct that "involved sale of the same substance in almost the same neighborhood").

*Hamilton*

On August 31, 2003, Defendant Hamilton was sentenced on the charge of possession with intent to distribute heroin. *See* Gov't 404(b) Mot. at 19. After a car and foot chase, officers arrested him with 16 zips of heroin on his person and later found 33 tin foils of PCP, four grams of crack, and five rounds of .40 caliber ammunition in his car. *See id.*[2] Though this conviction on its face is stale (14 years), the court nevertheless will admit it, subject to adequate offers of proof, *see* notes 3 and 4, *infra*, because subsequent trafficking activity by Hamilton suggests that he continued to act on the knowledge of the drug trade that he acquired, at least as early as 2003. In October 2005, Hamilton was convicted for possession of marijuana after law enforcement observed him conduct a hand-to-hand transaction. At the time of his arrest, law enforcement also seized 9.3 grams of cocaine, an unknown amount of marijuana, and nearly $1,000. *See* Hamilton Pre-Plea Crim. History Calc., ECF No. 96, at 7. On May 30, 2009, officers arrested Hamilton for possession with intent to distribute a controlled substance, possibly crack cocaine, following a traffic stop. *See id.* at 10.[3] And, on September 4, 2009, police arrested Hamilton for a host of offenses following a search warrant of a residence that turned up multiple weapons, rounds of ammunition, 29.5 grams of a weed substance, a digital scale, and mail matter and photo tying the residence to Hamilton.[4] *See id.* These trafficking activities in 2009 occurred less than eight years before the charged conspiracy, so evidence relating to them, as well as earlier trafficking events, would not run afoul of *Sheffield*.

---

[2] The court is disinclined to allow proof of the car and foot chase but will consider that issue if the government seeks to admit that evidence.
[3] This charged was dismissed for "no probable cause." *Id.* Accordingly, the court will require a further proffer of proof from the government if it seeks to admit evidence concerning this arrest.
[4] This charged was dismissed, but the pre-plea criminal history computation does not explain why. *See id.* The government therefore will have to satisfy the court that there is "sufficient evidence to support a finding by the jury" that Hamilton constructively possessed the guns and drugs in question. *Huddleston v. United States*, 485 U.S. 681, 685 (1988).

*Tucker*

Finally, in November and December 2008, law enforcement conducted five controlled purchases of PCP from Defendant Tucker, resulting in a conviction for distribution of PCP. *See* Gov't 404(b) Mot. at 19–20. Though these sales occurred some eight-and-a-half years before the start of the charged conspiracy, their probative value remains because, in this matter, Tucker is alleged to have been similarly involved in multiple controlled purchases or attempted purchases of modest quantities of narcotics in the summer of 2017. Tucker's prior conviction thus supplies evidence that Tucker knew how to acquire and sell drugs. Moreover, the events of late 2008 are not so stale as to significantly diminish their probative value or create a substantial likelihood of unfair prejudice. Tucker's prior trafficking conviction and conduct are therefore admissible under Rule 404(b).

B.

The prior trafficking convictions of Defendants Wright, Hamilton, and Tucker are all admissible under Rule 609. As felony convictions within the 10-year window, the convictions all "have some probative value on the issue of credibility." *Lipscomb*, 702 F.2d at 1062. Drug trafficking is a serious offense and demonstrates a "conscious disregard" for others. It is not a crime of impulse, which otherwise might reduce its probative value. *See id.* at 1071. Furthermore, should any of these defendants testify, the jury's perception of their denial of participation in the conspiracy will hinge on their credibility and, as the court understands it, their credibility relative to that of a cooperator. It would paint an incomplete and inaccurate picture for a jury to make a credibility assessment of Defendants without learning of their past convictions, when they surely will learn about the prior convictions of the cooperator.

III.

Finally, the court considers the government's request to cross-examine Samuels with his conviction from 1997 for aiding and abetting a manslaughter, for which he was released in 2013, thereby falling within the 10-year window. *See* Gov't 609 Mot. at 3. A ruling on this request is premature. The court lacks sufficient information about the offense to determine the degree of its probative value should Samuels testify. Such detail is critical given the violent, and therefore potentially prejudicial, nature of the offense. *Cf. Lipscomb*, 702 F.3d at 1072 (finding that the district court had not obtained sufficient information about a conviction for accessory after the fact to manslaughter before green-lighting its admission). The court therefore defers ruling on the admissibility of Samuels' aiding and abetting manslaughter conviction until trial.

IV.

For the foregoing reasons, the court grants in part, denies in part, and defers in part the government's motions to admit evidence of prior convictions and bad acts under Rules 404(b) and 609.

Date: February 19, 2019

Amit P. Mehta
United States District Judge