## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

ANTHONY FIELDS,

Defendant.

Case Number   18-CR-267:1-APM

## DEFENDANT'S SENTENCING MEMORANDUM

The Defendant Anthony Fields, by his attorney Kira Anne West, pursuant to Federal Rule of Criminal Procedure 32 and 18 U.S.C.  Section 3553(a), submits this memorandum to aid the Court at sentencing and hereby notifies the Court that he has received and reviewed the Presentence Report ("PSR") prepared in this case.   After carefully reviewing the PSR with Mr. Fields, written objections were sent to the probation officer.  These written objections are discussed, *infra*.  Mr. Fields respectfully requests that this Honorable Court impose a sentence below what is recommended in the PSR to account for:

1. His age, his childhood, and his physical health; and

2. His lack of need for a lengthy incarceration.

## BACKGROUND

While many young boys are preparing for little league tryouts and entering projects in the school science fair,  at 12 years old, Mr. Fields was  making his way through the juvenile justice system.   Unlike the boys at little league and the science fair who had both parents for support, and maybe a nanny in their absence, Mr. Fields's father was in jail on drug charges.   See P"s 111 -

1

113, PSR.   He has no support system. No church family. No foundation. He was born into an environment in which drugs and violence were the only way to survive. He wasn't involved in drugs for profit. His life depended on it. His adolescent "home life" was a disaster. *Id.* This is the oft told story in many DC criminal courtrooms. What to do? Therein lies the rub.

This has been a long road for Mr. Fields. The correctional system that Mr. Fields is intimately acquainted with has done nothing for him. The abuses he suffered while in Lorton prison underlie his presence before the Court today. Undersigned counsel is his fourth lawyer. The impact on his family has been a source of great stress, sadness and regret for him. Yet he is prepared to be sentenced by the Court and respectfully asks that this Court not penalize him for exercising his constitutional right to trial.[1]

---

[1] "Every day, in virtually every criminal court throughout the nation, people plead guilty solely as a consequence of a prosecutor's threat that they will receive an exponentially greater post-trial sentence compared to the pre-trial offer. The process is simple and the logic inexorable: the prosecutor conveys a settlement offer to the defense attorney–very often at the outset of the case before the defense has investigated or received discovery–threatening a post-trial sentence much greater than the pre-trial offer. The defense attorney–often before having had an opportunity to establish a relationship with the client–conveys that offer to her client who must choose between the opportunity and right to defend and the risk of adding years to the sentence if not decades after trial. That differential is known as the trial penalty, and this scene unfolds routinely in courtrooms across the country as if the Framers had intended this legalized coercion to be the fulcrum of the criminal justice system.

The Framers did not so intend. The Framers, surprisingly for a modern reader, considered jury trials to be every bit as important as the right to cast votes for our representatives. In fact, John Adams declared that ''[r]epresentative government and trial by jury are the heart and lungs of liberty. Without them we have no other fortification against being ridden like horses, fleeced like sheep, worked like cattle, and fed and clothed like swine and hounds.'' President Adams' colorful language reflects the strength of his view — a view shared by his contemporaries and the Framers — that the right to trial by jury protects the liberties of all individuals, not just the accused. The Framers imagined a process in which the accused, assisted by counsel, evaluated the charges, received the evidence, and elected to exercise or not exercise the right to compel the government to prove guilt beyond a reasonable doubt." *See* "The Tyranny of the Trial Penalty: The Consensus that Coercive

**OBJECTIONS TO THE PSR**

Pursuant to the United States Sentencing Guidelines (hereinafter "USSG"), Mr. Fields asserts that the following Guideline section applies:

USSG 2D1.1(c)(6)          Base offense level.                    28

Mr. Fields counsel has done the drug conversion and believes the amount of PCP indicated in the PSR chart, ¶  75, is in error.  He objects to any amount attributed to him from others' possession, especially Venable and Smith, who were not part of this indictment.  However, even omitting the drugs attributable to others, it appears that the base offense level remains 28.

Mr. Fields objects to the following  offense characteristics given by the probation officer in the PSR:

1.  **Role in the Offense**

In *United States v. Leyva*, 916 F.3d 14 (D.C. Cir. 2019),  in order for the   four-level enhancement to apply,   the court must establish by preponderance of the evidence that the defendant administered the criminal act. *See* 916 F.3d at 25. While this case involves Leyva's role within a large criminal enterprise, the application of the four-level enhancement  depends on the reliability of the government's facts surrounding defendant's involvement in the drug

---

Plea Practices Must End," N. Reimer & M. Sabelli, Federal Sentencing Reporter, Vol. 31, No. 4-5, April/June 2019.

conspiracy. *See id.* at 25-26; *see also United States v. Borda*, 848 F.3d 1044, 1071 (D.C. Cir. 2017) (outlining the facts to prove Borda's managerial role in the conspiracy).  The degree of the enhancement fluctuates depending on the defendant's involvement in the crime and the scope of the criminal act. *See United States v. Vega*, 826 F.3d 514, 538 (D.C. Cir. 2016). To justify an aggravating role enhancement, defendant must exert control over a participant in the criminal act rather than control of the scheme alone. *See id.* Defendant must oversee one or more participants in the scheme and not just the assets of the criminal activity. *See United States v. Olejiya*, 754 F.3d 986, 990 (D.C. Cir. 2014).   *See also*, *United States v.Graham*, 162 F.3d 1180(D.C. Cir 1998)( A person receiving a section.3B1.1 enhancement must exercise some control over others.

Although ¶¶'s  57, 63, 78, 80 and 81 state that  Mr. Fields qualifies for these adjustments,  there is simply no evidence to show that Mr. Fields supplied anyone with any drugs, unless  of course the Court finds the testimony of the confidential informant credible, which  he was not.  There is also no evidence that Mr. Fields controlled anyone.  In fact, in the evidence at trial, there are no photos or recorded phone conversations of Mr. Fields supplying drugs to anyone.   The factual statements of the three defendants that pled guilty-Smith, Venable and Lacy, do not mention Mr. Fields as their supplier, nor was there any evidence at trial that he supplied anyone other than Crud, according to Crud.  And even he couldn't remember on the first try:

Q How often did you receive narcotics from
Mr. Fields?
A Several occasions.
It all depends on, like, when did I need the process.
You know, it be the 1st or it could be before
payday, stuff like that.
It all depends.
It all depends.

Transcript March 4, AM, p. 53-54.

He doesn't answer the question he's asked by the prosecutor.  Crud also testified that Mr. Fields came to 4253 Barnaby Road but there was never any mention of when he came and there is no surveillance of Mr. Fields at this locations. *Id.* at p. 67. Crud goes on to say that Whistle and Foots were there but again, no specifics. *Id.* at p. 70.  Most telling was Crud's description of using his phone to get drugs and sell drugs yet there was no evidence of this from the government. *Id.* at p. 65-65.

Also, the description of Mr. Fields' conduct in ¶ ¶'s 26-28 says "suspected drug transactions" because that's all they are—suspected.  Although this conspiracy began, according to the indictment, in June, 2017, Mr. Fields does not show up until September, 2017.  Also, he was arrested February 1, 2018.  Somehow, all the other co-defendants are still being supplied with and sometimes using drugs after this date although Mr. Fields is incarcerated, so clearly, they had some other supplier and/or access to drugs.  Even the defendants that gave post arrest statements never mentioned Mr. Fields as a supplier or coordinator of drug activity.  Incredibly, the ATF agents and task force officers  did surveillance for a period of nearly 7 months,  yet never managed to take a photo of either confidential informant with Mr. Fields or Mr. Fields handing someone drugs.  The government has not shown that Mr. Fields is a manager/leader. Therefore, the role adjustment does not apply.

### 2.   Obstruction of Justice

The commentary to Section 3C1.1 states the following:

> "This provision is not intended to punish a defendant for the exercise of a constitutional right. A defendant's denial of guilt (other than a denial of guilt under oath that constitutes perjury) … is not a basis for application of this provision. In applying this provision in respect to alleged false testimony or statements by the defendant, the court should be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice."

Mr. Fields objects to ¶ 35 and the description of telephone calls therein for February 8 and 28, 2018. These are not transcribed calls. The descriptions are incorrect. For example, Mr. Fields never said "he needed everyone to say they also had keys to the barbershop."   This is simply a made up theory by the government. Nor did he conspire with others to make up this story. In fact, others did have keys to this room and to the barbershop. The problem is, the government's investigative agents never tried anyone else's keys so we'll never know with certainty who else had keys.  Because the Government did not want to reveal their investigation into Willie Smith, they did not pursue finding his keys either. Nor were the keys of Daryl Smith or James Venable ever tried in the unnumbered room, also known as Room J.  This too was an investigative faux pas.

There is absolutely nothing obstructive about the facts in ¶ ¶'s 35, 36 or 37. Undersigned counsel does not know if Lacy Hamilton received 2 points for obstruction for this call, but this would be instructive. If the government did not insist on it for him, they can't apply it  to Mr. Fields.  Finally, Mr. Fields did not instruct anyone to get rid of Lacy Hamilton's phone. Although Mr. Fields made reference to the phone, he was not telling anyone to hide evidence. He was saying something completely independent, and if you listen to the call, you can see the reference was to protect his friend.

Likewise, Mr. Fields objects to ¶ 63. Mr. Fields never told anyone to obtain keys, but rather to "produce" the keys they already had. This is what the recording says. One can't be held accountable for obstruction of justice based on the government's theory of the case. It must be based on facts. A theory must be based on evidence.

6

The call should be transcribed by the government if they want to argue this.

### 3.  <u>Relevant Conduct</u>

U.S.S.G. Subsection 1B1.3( (a)(1)(B) applies only when the defendant acted with others as part of a "jointly undertaken criminal activity."   In such a case, anything done as part of the activity is relevant conduct, if it was within the "scope" of the activity, was "in furtherance" of the activity, and was "reasonably foreseeable" by the defendant. *All three criteria must be met for an act or omission to be relevant conduct under subsection (a)(1)(B).* (emphasis added). *See* U.S.S.G. §1B1.3, comment. (n.3). Acts of others that were not within the scope of the defendant's agreement, even if those acts were known or reasonably foreseeable, are not relevant conduct under subsection (a)(1)(B). *See United States v. Hunter*, 323 F.3d 1314, 1319-20 (11th Cir. 2003) (reasonable foreseeability is irrelevant to relevant conduct if the acts in question are not also within the scope of the criminal activity). The sentencing court must assess the scope of the criminal activity the particular defendant agreed to jointly undertake.  U.S.S.G. §1B1.3, comment. (n.3(B)).

.

Mr. Fields objects to ¶ 49. It was not reasonably foreseeable to him that Venable and Smith were part of any conspiracy to sell drugs, or anyone else.  Even if Mr. Fields knew that they sold drugs,  they were not part of any jointly undertaken activity.  There are no acts attributable to Mr. Fields  that furthered the objectives of any agreement.  There is no indication that Mr. Fields had direct involvement or knew anything about anyone else's drug trafficking. The government has shown no connection other than photographs that they know each other. For example, there are no photographs or phone calls where they are dealing in drugs.  So to assume

that a picture implies that these two or three people are dealing drugs together, without more, is

just an assumption.  This applies to all other co-defendants in the case as well.

### 4.   <u>Maintaining Premises</u>

Note 17 to 2D1.1 of the U.S.S.G. states:
 <u>Application of Subsection (b)(12)</u>.—Subsection (b)(12) applies to a defendant who
knowingly maintains a premises (<u>i.e.</u>, a building, room, or enclosure) for the purpose
of manufacturing or distributing a controlled substance, including storage of a
controlled substance for the purpose of distribution.

Among the factors the court should consider in determining whether the
defendant "maintained" the premises are (A) whether the defendant held a possessory
interest in (<u>e.g.</u>, owned or rented) the premises and (B) the extent to which the defendant
controlled access to, or activities at, the premises. Manufacturing or distributing a
controlled substance need not be the sole purpose for which the premises was maintained,
but must be one of the defendant's primary or principal uses for the premises, rather than
one of the defendant's incidental or collateral uses for the premises. In making this
determination, the court should consider how frequently the premises was used by the
defendant for manufacturing or distributing a controlled substance and how frequently
the premises was used by the defendant for lawful purposes.

U.S.S.G. Section 2D1.1 (2019).

Mr. Fields was not a renter or owner of the premises, and he used the premises for

recreation, as evidenced by his testimony as well as that of Nakeisha Fox.  Unfortunately,

once again, the investigators did not pull any videotape close to the red door nor did they

use a pole camera.  Moreover, they did no surveillance of the barbershop or Mr. Fields

for more than two weeks before his February 1, 2018 arrest. Therefore, this enhancement

should not apply because the enhancement is contingent upon  the extent to which Mr.

Fields had control of the area.

### 5.   <u>Misrepresentation of substance</u>

Mr. Fields objects to ¶ 77. There is no evidence that Mr. Fields misrepresented any

drug and "knowingly misrepresented or knowingly marketed as another substance a mixture or substance containing fentanyl…."  See U.S.S.G. Section 2D1.1(13).

Based upon these objections, with an unchanged Base Offense Level  and a criminal history category of IV,  Mr. Fields's final guideline range should be  110-137 months.

### Request for Downward departure/Variance

Depending on what the Court finds the Adjusted offense level to be, Mr. Fields will ask for a downward departure or variance.  The United States Court of Appeals for the DC Circuit has found that a downward departure may be granted when the criminal history category significantly over-represents the magnitude of the defendant's prior criminal conduct and the defendant's probability of recidivism.  *See United States v. Beckham*, 968 F.2d 47, 54 (D.C. Cir. 1992)(criminal history category VI).  Likewise, in *United States v. Clark*, the court found that a downward departure is permissible if it is determined that the defendant's criminal history category substantially over-represents defendant's criminal history or chances of recidivism.  *See* 8 F.3d 839, 843 (D.C. Cir. 1993).  To make this determination, the court must consider information "which the [Sentencing] Commission may have otherwise considered in promulgating other provisions of the Guidelines."  *See United States v. Spencer*, 25 F.3d 1105, 1112 (D.C. Cir. 1994) (*quoting United States v. Shoupe*, 988 F.2d 440, 445 (3rd Cir. 1993)).  In *Spencer*, Judge Randolph noted that factors such as age and immaturity at the time of prior transgressions could thus be considered.  *See id*.  It has also been found that the court can consider connections to family and community for purposes of sentencing.  *See In re Sealed Case*, 292 F.3d 913, 917 (D.C. Cir. 2002).

Recently, in May 2019,  the U.S.S.C. issued a report called "The effects of aging on recidivism among federal offenders." https://www.ussc.gov/research-reports/effects-aging-recidivism-among-federal-offenders. A key finding is that for certain major offenses, such as drug trafficking offenders, those "under age 30 at the time of release, the re-arrest rates were… 62.5 percent."  And for those "offenders age 60 and older at the time of release, the re-arrest rates were 17.5 percent…."

Fortunately, Mr. Fields has a supportive partner, LaShawn Wilson, and strong relationships with his daughters, all of whom are successful, contributing members of society. This support at home when he is released will be very important to his re-entry into the community.

A sentence below what is recommended by the proposed guideline range, that is, a variance of more than ½ from the bottom of the proposed sentencing guideline range, is a reasonable variance to the sentence that must be  "sufficient, but not greater than necessary to address the sentencing factors and goals set forth in Title 18 U.S.C. § 3553(a).  Under the facts of this case, such a sentence, will protect the public, provide just punishment, and afford adequate deterrence.  Each case that comes before this Honorable Court is unique and to base Mr. Fields's sentence on an advisory, standardized system would render the facts, context and background of this case and Mr. Fields obsolete.

A lengthy term of imprisonment would not serve the statutory purposes of punishment, deterrence or further protect the public.   Based on foregoing and following reasons, he respectfully requests that the Court exercise discretion and grace and sentence him to a sentence of 120 months, the mandatory minimum sentence in this case.

**LEGAL STANDARD**

The selection of an appropriate sentence from within the guidelines range, as well as the decision to depart from the range in certain circumstances, are decisions left solely to the sentencing court. *Williams v. United States*, 503 U.S. 193, 195 (1992).   The sentencing guidelines are merely advisory. *United States v. Booker*, 543 U.S. 220 (2005).   The Supreme Court has made clear that the Sentencing Guidelines have become only one of the many factors that a sentencing court should consider.   *See Gall v. United States*, 552 U.S. 38, 49 (2007) ("The Guidelines are not the only consideration … the district judge should consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party"). In reviewing the factors, the court may not presume the Guidelines range is reasonable. *Id*.

In reviewing the sentence, the appellate court must first ensure that the district court made no significant procedural errors and then consider the sentence's substantive reasonableness under an abuse-of-discretion standard, taking into account the totality of the circumstances, including the extent of a variance from the Guidelines range, but must give due deference to the district court's decision that the §3553(a) factors justify the variance. *United States v, Gall*, 552 U.S. 38, 49 (2007). (*citing United States v. Booker*, 543 U.S. 220, 246 (2005)).

Section 3553(a) of Title 18 of the United States Code enumerates certain factors a district court must consider when sentencing a defendant who has been convicted of a federal offense:

1.   The nature and circumstances of the offense and the history and characteristics of the defendant;
2.   The need for the sentence imposed to:
   a) Reflect the seriousness of the offense;
   b) Promote respect for the law and provide just punishment for the offense;
   c) Afford adequate deterrence to criminal conduct;
   d) Protect the public from further crimes of the defendant; and
   e) Provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
3.   The kinds of sentences available;

4.      The kinds of sentence and the sentencing range for the applicable category of offense…;
5.      Any pertinent policy statements issued by the Sentencing Commission;
6.      The need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and
7.      The need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1-7). Most of these considerations apply here and are discussed as they relate to Mr. Fields.

At sentencing, a district court must impose a sentence that is "sufficient, but not greater than necessary" in light of the factors identified in §3553(a).    *United States v. Mendoza-Mendoza*,  597 F.3d 212, 216 (4th Cir. 2010), *citing Kimbrough v. United States*, 552 U.S. 85, 111 (2007)(quoting §3553(a)).   A "district court making the initial sentencing decision may not presume that the appropriate sentence in a given case will come from the Guidelines*." Mendoza-Mendoza*, 597 F.3d at 216, *citing Rita v. United States*, 551 U.S. 338, 351 (2007).  The Court can no longer presume that a guideline sentence is the correct sentence; to do so would be taking a large step towards returning to the pre-Booker regime. *United States  v. Pickett*, 475 F.3d 1347 (D.C. Cir. 2007). Under the new advisory guideline scheme, "district courts have a freer hand in determining sentences." *United States. v. Trujillo-Tauruses*, 405 F.3d 814, 819 (10th Cir. 2005). They may sentence in or out of the applicable guideline range.  District judges now have more substantive discretion in sentencing, and retain the power to re-balance the individual sentencing against the goals of sentencing uniformity and predictability.

And a district court need not justify a sentence outside the Guidelines range with a finding of "extraordinary" circumstances."  *Gall v. United States*, 552 U.S. 38, 47 (2007) (upholding a sentence of thirty-six months probation, a 100 percent downward deviation from the Guidelines range of thirty-thirty-seven months imprisonment).

 **FACTORS CONSIDERED UNDER 18 U.S.C. §3553(a)**

**A.** **Nature & circumstances of the Offense & the History and Characteristics of Mr. Fields**

We will not reiterate the facts of the trial. This Honorable Court was able to observe not only the impeachment of the confidential informant but also the demeanor of Crud as he testified. The court may recall on cross-examination that Crud was not able to say when, where or how these alleged drug transactions were effectuated. Allegedly, Crud picked up drugs weekly from Mr. Fields over a 6 month period. It strains credulity to imagine this was not captured one time by any law enforcement surveillance or other witness. Most importantly, Crud never told anyone about Mr. Fields being his supplier. This came up due to Crud's cooperation in an unrelated case. Mr. Fields had no firearms, he always cooperated with law enforcement and there were no drugs found in his home except for a small amount personal use marijuana which is legal.

Mr. Fields has an extensive criminal history. However, his post arrest behavior and behavior while incarcerated shows that he is capable of returning to his family and community as productive citizen and the Court can rely on that as a basis to sentence him considering the 3553 factors. He has goals now. He is an author and has a great clothing line. He is respected in his community. A lengthy prison sentence will rob him of the opportunity to give back and be a productive member of society. Someone who has public goals is much less likely to engage in private criminal conduct.

**B. Need for the Sentence imposed**

1. **General deterrence – 18 U.S.C. § 3553(a)(2)(B) – to adequately deter others from criminal conduct**

Incarcerating Mr. Fields to the proposed guideline sentence will not serve the need to deter others from committing crimes any better than a sentence somewhat below that. The National Institute of Justice, Department of Justice, issued a summary of the current state of empirical research stating that "prison sentences are unlikely to deter future crime," and "increasing the severity of punishment does little to deter crime."  U.S. Dep't of Justice, Office of Justice Programs, Nat'l Inst. of Justice, *Five Things to Know About Deterrence* (July 2014) (relying on Daniel S. Nagin, *Deterrence in the Twenty-First Century*, 42 Crime & Justice in America 199 (2013)), available at https://ncjrs.gov/pdffiles1/njj/247350.pdf.  A sentence of 120 months will deter the general public from committing drug trafficking crimes.

2.  **Specific deterrence – 18 U.S.C. § 3553(a)(2)(C) – to protect the public from further crimes of the defendant**

Incarcerating Mr. Fields for an additional amount of time  is not necessary to serve the need to deter him from committing further crimes. A lengthy incarceration in addition to his time served will not only serve no rehabilitative purpose for him but will also prolong and exacerbate his medical issues.  *See* ¶ 119. Also, Mr. Fields, a 44 year old man, has an age that reduces the likelihood of recidivism.  As previously stated,  this is a factor the Court should consider.   *See Simon v. United States*, 361 F.Supp.2d 35, 48 (E.D.N.Y. 2005).

More recently, the National Institute of Justice, Department of Justice, issued a summary of the current state of empirical research stating that "prison sentences are unlikely to deter future crime," and "increasing the severity of punishment does little to deter crime."  U.S. Dep't of Justice, Office of Justice Programs, Nat'l Inst. of Justice, *Five Things to Know About Deterrence* (July 2014) (relying on Daniel S. Nagin, *Deterrence in the Twenty-First Century*, 42 Crime & Justice in America 199 (2013)), available at https://ncjrs.gov/pdffiles1/njj/247350.pdf. In a study of drug offenders, there was no detectable difference between probation and

imprisonment on rates of re-arrest.  Donald P. Green & Daniel Winik, *Using Random Judge Assignments to Estimate the Effects of Incarceration and Probation on Recidivism among Drug Offenders*, 48 Criminology 357 (2010) ("Those assigned by chance to receive prison time and their counterparts who received no prison time were re-arrested at similar rates over a four-year time frame.")

### C. The kinds of sentences available

 Imposition of a fine is discretionary, and, defendant respectfully submits, should not be ordered in this case.  Defendant's financial condition is such that he cannot pay any significant fine.  See U.S.S.G. **§ 5E1.2(a)** (fine not recommended if defendant unable to pay).

18 U.S.C. § 3553(c) " requires that the court provide a 'reasoned basis' for its decision and consider all 'nonfrivolous reasons' asserted for an alternative sentence." *United States v. Locke*, 664 F.3d 353, 357 (D.C. Cir. 2011) (citation omitted).

The Court must give at least a 120 month sentence as the safety valve does not apply and there is a mandatory minimum required by statute.

### D.  The need to avoid unwarranted sentencing disparities

Section 3553(1)(6) directs Courts to avoid unwarranted sentencing disparity. According to the annual statistics published by the United States Sentencing Commission,  Table 14 of the United States Sentencing Commission Sourcebook, 2017,  entitled "Length of Imprisonment for Offenders in 'Each Criminal History Category by Primary Offense Category" for 2017 indicates that  in cases wherein  drug trafficking is the crime, the median sentence given for criminal history category IV is 90 months.  *See* Exhibit 1;  *See also*, PSR ¶  195.

As the Court knows, Smith and Venable, defendants in related cases, who both had

loaded firearms when arrested, received 36 and 80 months respectively. Moreover, as ¶ 44 of the PSR indicates, Mr. Hamilton's vehicle had a positive alert from a firearm explosives detection canine. Law enforcement "suspected a firearm had been recently placed" there. Earlier in the day, he'd been seen "leaning over the front side of the door and removing a black bag from the car."   He received 15 months.  Also, as the Court knows, the jury acquitted Mr. Fields of the firearms charges in this case. There was not a scintilla of evidence that Mr. Fields ever had anything to do with a firearm. It would be highly disparate to give Mr. Fields more than 120 years when considering the sentences of these defendants.

## CONCLUSION

Mr. Fields disputes his role in the charged conspiracy which he clearly articulated when he testified at trial.  He comes before the Court having spent the majority of his life incarcerated. Although he is no stranger to the criminal justice system, it should be noted that there was no firearm or violence in the commission of this offense.

Given his age, his health issues, and his family needs and circumstances,  plus all other applicable factors the Court will consider, Mr. Fields respectfully moves this court to impose 120 months of incarceration which is "sufficient but not greater than necessary" as required by 18 U.S.C. §3553(a).   There is little possibility of him repeating his offense or posing a threat to public safety in any way.   It would be a sentence in the best tradition of federal judicial discretion, that would consider Mr. Fields as an individual and account for his unique failings and positive attributes that, in the words of Justice Kennedy "sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."  *Rita v. United States*, 551 U.S. at 364, (Stevens, J. concurring), *citing Koon v. United States*, 116 S.Ct. 2053 (1996).

Respectfully submitted,

/s/ Kira West
Attorney at Law
1325 G Street N.W., Suite 500
Washington, D.C. 20005
kiraannewest@gmail.com
Attorney for Mr. Anthony Fields

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this motion has been emailed and filed under seal  this 6th day of June, 2019.

/s/ Kira West