AO 243 (Rev. 09/17)

## MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

| **United States District Court** | District | of Columbia | |
|---|---|---|---|
| Name *(under which you were convicted)*:<br>Anthony Fields | | | Docket or Case No.:<br>18-00267 |
| Place of Confinement:<br>USP Hazelton, PO Box 2000, Bruceton Mills, WV 26525 | | Prisoner No.:<br>16545-016 | |
| UNITED STATES OF AMERICA | | Movant *(include name under which convicted)* | |
| | V. | Anthony Fields | |

### MOTION

1.  (a) Name and location of court which entered the judgment of conviction you are challenging:
    U.S District Court for the District of Columbia
    Honorable Amit P. Mehta

    (b) Criminal docket or case number (if you know): 18-00267

2.  (a) Date of the judgment of conviction (if you know): June 21, 2019

    (b) Date of sentencing: June 13, 2019

3.  Length of sentence: 192 months

4.  Nature of crime (all counts):
    1. Conspiracy to distribute narcotics, to wit, phencyclidine, heroin, fentanyl and buprenorphine; 2. possession with intent to distribute 100 grams or more phencyclidine; 3. possession with intent to distribute 40 grams or more of fentanyl; 4. unlawful possession with intent to distribute buprenorphine; 5. unlawful possession with intent to distribute synthetic cannabinoids; 6. unlawful maintenance of a premises to manufacture, distribute, store, and use a controlled substance.

5.  (a) What was your plea? (Check one)
    (1) Not guilty [✔]        (2) Guilty [ ]        (3) Nolo contendere (no contest) [ ]

6.  (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, what did you plead guilty to and what did you plead not guilty to?

6.  If you went to trial, what kind of trial did you have? (Check one)   Jury [ ]   Judge only [ ]

7.  Did you testify at a pretrial hearing, trial, or post-trial hearing?   Yes [ ]   No [ ]

AO 243 (Rev. 09/17)

8. Did you appeal from the judgment of conviction?   Yes ☑   No ☐

9. If you did appeal, answer the following:

   (a) Name of court: United States Court of Appeals for the District of Columbia

   (b) Docket or case number (if you know): 19-3043

   (c) Result: Convictions and sentences affirmed.

   (d) Date of result (if you know): 9/3/2021

   (e) Citation to the case (if you know): 14 F.4th 804

   (f) Grounds raised:
1. The 2017 traffic stop violated the Fourth Amendment; 2. The district court erred when it denied Movant's request for self-representation at trial; and 3. Ineffective assistance of counsel.

   (g) Did you file a petition for certiorari in the United States Supreme Court?   Yes ☐   No ☐

     If "Yes," answer the following:

     (1) Docket or case number (if you know): 21-7724

     (2) Result: Petition for writ of certiorari denied.

     (3) Date of result (if you know): 5/31/2022

     (4) Citation to the case (if you know): 142 S. Ct. 2769

     (5) Grounds raised:

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications, concerning this judgment of conviction in any court?
   Yes ☐   No ☑

11. If your answer to Question 10 was "Yes," give the following information:

   (a) (1) Name of court:

     (2) Docket or case number (if you know):

     (3) Date of filing (if you know):

AO 243 (Rev. 09/17)

    (4)  Nature of the proceeding: _____

    (5)  Grounds raised:

    (6)  Did you receive a hearing where evidence was given on your motion, petition, or application?

        Yes ☐    No ☐

    (7)  Result: _____

    (8)  Date of result (if you know): _____

(b)  If you filed any second motion, petition, or application, give the same information:

    (1)  Name of court: _____

    (2)  Docket of case number (if you know): _____

    (3)  Date of filing (if you know): _____

    (4)  Nature of the proceeding: _____

    (5)  Grounds raised:

    (6)  Did you receive a hearing where evidence was given on your motion, petition, or application?

        Yes ☐    No ☐

    (7)  Result: _____

    (8)  Date of result (if you know): _____

(c)  Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

    (1)  First petition:    Yes ☐    No ☐

    (2)  Second petition:    Yes ☐    No ☐

(d)  If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

AO 243 (Rev. 09/17)

12.   For this motion, state every ground on which you claim that you are being held in violation of the Constitution,
     laws, or treaties of the United States.  Attach additional pages if you have more than four grounds.  State the facts
     supporting each ground.  Any legal arguments must be submitted in a separate memorandum.

**GROUND ONE:** Ineffective assistance of counsel in violation of the Sixth Amendment during the plea negotiation stage
of the proceedings.

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):
See attached memorandum and affidavit

(b)  **Direct Appeal of Ground One:**

(1)   If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐   No ☑

(2)   If you did not raise this issue in your direct appeal, explain why:
Grounds of ineffective assistance of counsel are properly raised on collateral review.

(c)  **Post-Conviction Proceedings:**

(1)   Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐   No ☑

(2)   If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3)   Did you receive a hearing on your motion, petition, or application?

Yes ☐   No ☐

AO 243 (Rev. 09/17)

    (4)  Did you appeal from the denial of your motion, petition, or application?

        Yes ☐    No ☐

    (5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

        Yes ☐    No ☐

    (6)  If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

    (7)  If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND TWO:** Ineffective assistance of counsel during the trial proceedings based on Counsel's failure to object to lab reports on Confrontation Clause grounds.

    (a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

See attached memorandum

    (b)  **Direct Appeal of Ground Two:**

        (1)  If you appealed from the judgment of conviction, did you raise this issue?

            Yes ☐    No ☑

AO 243 (Rev. 09/17)

(2)   If you did not raise this issue in your direct appeal, explain why:
Claims of ineffective assistance of counsel are properly raised on collateral review.

(c)   **Post-Conviction Proceedings:**

(1)   Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐   No ☑

(2)   If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3)   Did you receive a hearing on your motion, petition, or application?

Yes ☐   No ☐

(4)   Did you appeal from the denial of your motion, petition, or application?

Yes ☐   No ☐

(5)   If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐   No ☐

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this
issue:

AO 243 (Rev. 09/17)

**GROUND THREE:** _____

    (a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

    (b)  **Direct Appeal of Ground Three:**

        (1)  If you appealed from the judgment of conviction, did you raise this issue?

            Yes ☐     No ☐

        (2)  If you did not raise this issue in your direct appeal, explain why:

    (c)  **Post-Conviction Proceedings:**

        (1)  Did you raise this issue in any post-conviction motion, petition, or application?

            Yes ☐     No ☐

        (2)  If you answer to Question (c)(1) is "Yes," state:

        Type of motion or petition: _____

        Name and location of the court where the motion or petition was filed:

        Docket or case number (if you know): _____

        Date of the court's decision: _____

        Result (attach a copy of the court's opinion or order, if available):

        (3)  Did you receive a hearing on your motion, petition, or application?

            Yes ☐     No ☐

        (4)  Did you appeal from the denial of your motion, petition, or application?

            Yes ☐     No ☐

        (5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

            Yes ☐     No ☐

AO 243 (Rev. 09/17)

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND FOUR:**

(a)   Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

(b)   **Direct Appeal of Ground Four:**

(1)   If you appealed from the judgment of conviction, did you raise this issue?
Yes ☐       No ☐

(2)   If you did not raise this issue in your direct appeal, explain why:

(c)   **Post-Conviction Proceedings:**

(1)   Did you raise this issue in any post-conviction motion, petition, or application?
Yes ☐       No ☐

(2)   If you answer to Question (c)(1) is "Yes," state:

AO 243 (Rev. 09/17)

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3)  Did you receive a hearing on your motion, petition, or application?

       Yes ☐     No ☐

(4)  Did you appeal from the denial of your motion, petition, or application?

       Yes ☐     No ☐

(5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

       Yes ☐     No ☐

(6)  If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7)  If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

13.  Is there any ground in this motion that you have <u>not</u> previously presented in some federal court?  If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

Neither of the grounds have been presented in any prior proceeding. This is so based on the valid presumption that claims of ineffective assistance of counsel are more properly raised on collateral review.

AO 243 (Rev. 09/17)

14.    Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the you are challenging?        Yes ☐        No ☑

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

15.    Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:

(a)  At the preliminary hearing:
Brian McCants

(b)  At the arraignment and plea:
Manuel J. Retureta

(c)  At the trial:
Kira Anne West

(d)  At sentencing:
same

(e)  On appeal:
Paul Rosenzweig

(f)  In any post-conviction proceeding:

(g)  On appeal from any ruling against you in a post-conviction proceeding:

16.    Were you sentenced on more than one court of an indictment, or on more than one indictment, in the same court and at the same time?        Yes ☐        No ☑

17.    Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?        Yes ☐        No ☑

(a)  If so, give name and location of court that imposed the other sentence you will serve in the future:

(b)  Give the date the other sentence was imposed:

(c)  Give the length of the other sentence:

(d)  Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?        Yes ☐        No ☐

AO 243 (Rev. 09/17)

18.   TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

---

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section.  The limitation period shall run from the latest of –

(1)   the date on which the judgment of conviction became final;

(2)   the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

(3)   the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4)   the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

AO 243 (Rev. 09/17)

Therefore, movant asks that the Court grant the following relief:
The government should be required to reoffer the 100-month plea agreement and/or the convictions should be reversed based on the Sixth Amendment Confrontation Clause violation.

or any other relief to which movant may be entitled.

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on _____4/17/2023_____ .
(month, date, year)

Executed (signed) on _____4/17/2023_____ (date)

_____
Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.

**IN THE**
**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**Criminal No. 18-00267**

---

**UNITED STATES OF AMERICA**

**V.**

**ANTHONY FIELDS,**
                                                    **Petitioner**

---

**MEMORANDUM OF LAW IN SUPPORT OF**
**PETITIONER'S 28 U.S.C. § 2255 MOTION**


RECEIVED
Mail Room

APR 2 4 2023

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

## I. STATEMENT OF CASE

A grand jury in the District of Columbia returned a multi-count indictment against Petitioner and several others. Specifically, the indictment charged Petitioner with, inter alia, conspiracy to possess with intent to distribute narcotics, to wit, phencyclidine, heroin, fentanyl, and buprenorphine, in violation of 21 U.S.C. § 846; possession with intent to distribute 100 grams or more phencyclidine, in violation of 21 U.S.C. § 841; possession with intent to distribute 40 grams or more of fentanyl, in violation of 21 U.S.C. § 841; unlawful possession with intent to distribute buprenorphine, in violation of 21 U.S.C. § 841; unlawful possession with intent to distribute synthetic cannabinoids, in violation of 21 U.S.C. § 841; unlawful maintenance of a premises to manufacture, distribute, store, and use a controlled substance, in violation of 21 U.S.C. § 856.

Petitioner entered a plea of not guilty and proceeded to a trial by jury. The jury ultimately convicted Petitioner of each of the above of the referenced offenses. Relatedly, he was acquitted of several firearm and narcotic offenses.

On September 3, 2023, the United States Court of Appeals affirmed the conviction and sentence. See United States v. Tucker, 12 F.4th 804 (D.C. Cir. 2021).

A timely writ of certiorari was filed to the U.S. Supreme Court. This petitioner was denied on May 31, 2022.

## II. STATEMENT OF CASE

During the pretrial stage of the proceedings, the government extended a 100-month plea offer to Petitioner. See Attachment (Field's Affidavit). When the plea offer was initially

1

made, Petitioner was represented by Kevin McCants. *Id.* @ ¶ 3.  McCant's merely informed

Petitioner of the existence of the offer but failed to provide him with other critical information

pertinent to the decision of whether to accept or deny the plea offer:

> Throughout the very limited discussions that occurred between
> Affiant and McCants regarding the government's plea offer, he
> never advised the Affiant as to what charges the plea embodied,
> what the statutory minimum and maximum were for those charges
> versus what the Affiant's sentencing exposure would be had he
> proceeded to trial, the strength (or lack thereof) of the government's
> case or how the United State Sentencing Guidelines would potentially
> apply---including the potential applicability of certain enhancement(s)---
> had he proceeded to trial and how that would differ from the government's
> plea offer. Thus, based on the limited information that the Affiant received
> from McCants, he decided to reject the government's 100-month plea offer.
> Had the Affiant been so advised by McCants, he would not have proceeded
> to trial and would have instead accepted the government's plea offer.

> *Id.*

Subsequent to McCants's removal from the case, Petitioner was represented by Manuel

J. Retureta. While Retureta was counsel of record, the 100-moth plea offer was still pending.

Similar to McCants, Retureta provided minimal information during the plea negotiation of the

stage of the proceedings:

> Prior to being removed from the case, Retureta's position was that the
> Affiant should not accept any type of plea that the government offered
> because the case against him was weak. To illustrate this weakness, he
> drew a picture which consisted of a circle. In the circle he jotted down
> symbols that were the barbershop, the drugs and the Affiant. He explained,
> that the picture was designed to illustrate that the government had not
> produced any evidence linking him to the barbershop such as a lease nor
> anything that could connect him to the drugs (no wiretaps, no DNA, no finger-
> prints) and that all they possessed was a key to an unnumbered room.

> In or about August 2018, a video legal visit was arranged. Therein, Retureta
> mentioned that the government's plea offer---a plea offer that he never
> acknowledged prior to this video visit----was about to be rescinded and
> that they were in the process of filing a superseding indictment. At no point

during this video visit, or any other time, did he explain the nature of the charges which formed the basis of the plea, what the statutory minimum or mandatory penalties were for those charges and what the Affiant's potential mandatory sentencing exposure would be if opted to proceed to trial and how the sentencing guidelines would potentially apply if he proceeded to trial---that is, how certain enhancements would apply and how that would affect the Affiant's sentencing exposure. Within the backdrop of this dearth of information, the Affiant once again declined to accept the government's plea offer. Had Retureta explained the above to the Affiant regarding the contrast in his sentencing exposure as it related to a loss at trial versus the plea offer, he would not have proceeded to trial and would have instead accepted the government's 100-month plea offer.

Of relevance, when Retureta did explain why he believed the government's case was weak, he was aware that the Affiant wrote urban novels and that they were rife with references to drugs and crime and that those references would be admissible at trial and would be used by the government but this point was omitted in his analysis of the government's case. Furthermore, he did not explain that the 2017 case from Prince George's County would be used by the government at trial or that criminal liability could attach for the guns found in the kitchen above the barbershop.

*Id.* @ ¶ 6.

Near the conclusion of the trial, the following exchange occurred regarding the

potential testimony of the chemist as to the lab reports authenticating the controlled

substances which were relevant to all of Petitioner's narcotic offenses:

Court:   One quick thing, let me just. I'm sorry before I – it's been on My mind.

I assume all defense counsel – because there has been cross-examination eliciting testimony about what the test results have been for various suspected narcotics. I've assumed all along you have stipulated to that and also waived un terms of any confrontation rights with respect to the chemist, because this, at least as a technical matter, it would not be proper to elicit that testimony from officers or agents.

AUSA:   Your Honor, it's my understanding that the chemical analyses that were attached to 60 have been moved into evidence. The two pages that were the list is in debate, and I propose to have

> them be government's 60.2 and 60.3, which we're finalizing,
> but all the analyses are in evidence and that's how we've been
> treating it.

Count: All right.

> Well, bottom line is, given that these drug reports are now in
> Evidence and nobody objected to them, I also took from that
> Nobody is seeking to invoke their confrontation rights with
> Respect to any of the chemist. Okay.

*See* Transcripts, @ 179-80.

On direct appeal, appellate counsel raised several claims. However, notwithstanding this exchange and the lack of testimony from the chemist in relation to the lab reports, no claim Sixth Amendment confrontation claim involving the introduction of the lab reports in the absence of the testimony from the chemist was raised.

### III. Legal Standard

#### A. 28 U.S.C. § 2255

A prisoner in custody under sentence of a federal court may move the sentencing court to vacate, set aside, or correct its sentence if the prisoner believes that "the sentence was imposed in violation of the Constitution or laws of the United States, ... or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The petitioner bears the burden of proving his entitlement to relief by a preponderance of the evidence. *United States v. Simpson*, 475 F.2d 934, 935 (D.C. Cir. 1973).

Section 2255 requires a district judge to hold a hearing on the petition unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. In interpreting this requirement, our Court of Appeals has held that:

> the judge's recollection of the events at issue may enable [her] summarily to dismiss a § 2255 motion; indeed, [her] ability to do so is one of the advantages of § 2255 relative to habeas corpus for state prisoners. Only where the § 2255 motion raises "detailed and specific" factual allegations whose resolution 21*21 requires information outside of the record or the judge's "personal knowledge or recollection" must a hearing be held. Even if the files and records of the case do not clearly rebut the allegations of the prisoner, no hearing is required where his claims are "vague, conclusory, or palpably incredible.

*See* <u>United States v. Pollard</u>, 959 F.2d 1011, 1030-31 (D.C. Cir. 1992).

**B. Ineffective Assistance of Counsel Standard**

Under the Sixth Amendment of the Constitution, an accused has the right to "reasonably effective assistance" of counsel. <u>*Strickland v. Washington*</u>, 466 U.S. 668, 687 (1884). This guarantee applies at all critical stages of a criminal proceeding, including plea negotiations, *see, e.g.,* <u>*Missouri v. Frye*</u>, 566 U.S. 134, 140 (2012); <u>*Lafler v. Cooper*</u>, 566 U.S. 156, 164-65 (2012), and direct appeal. <u>*Evitts v. Lucey*</u>, 469 U.S. 387, 397 (1985).

The two-prong test established in Strickland for analyzing claims of ineffective assistance of counsel requires a petitioner to show "that ... counsel's performance `fell below an objective standard of reasonableness,' and (2) `there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" <u>*Payne v. Stansberry*</u>, 760 F.3d 10, 13 (D.C. Cir. 2014) ( *quoting* <u>Strickland</u>, 466 U.S. @ 687-88).

In the plea-bargaining context, a petitioner must show that the advice of counsel (to forgo the plea) was not within the range of competence demanded of attorneys in criminal

cases, *see McMann v. Richardson*, 397 U.S. 759, 711 (1970), and there is a reasonable probability that he would have accepted the earlier proposed plea offer, neither the prosecution nor the trial court would have prevented the offer from being accepted, and the plea terms would have been less severe than under the judgment and sentence actually imposed. *United States v. Aguiar*, 894 F.3d 351, 359-60 (D.C. Cir. 2018) (*citing Lafler*, 566 U.S. @ 164).

Additionally, the *Strickland* standard of review applies to ineffective assistance of appellate counsel claims. *See Payne*, 760 F.3d @ 13 ((noting that the Strickland standard applies to ineffective assistance of appellate counsel claims). To establish such a claim, petitioner must show that appellate counsel performed deficiently and that the deficient performance resulted in prejudice. To demonstrate deficient performance, the petitioner must show that appellate counsel's failure to discover a non-frivolous issue and file a merits brief raising that issue fell outside the range of professionally acceptable performance. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). To demonstrate prejudice, Petitioner must show a reasonable probability exists that, but for appellate counsel's unreasonable failure to brief a specific issue, he would have prevailed on appeal. *See Smith*, 528 U.S. @ 285-86.

## IV. ARGUMENT

### A. PETITIONER'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED VIOLATED DURING THE PLEA NEGOTIATION STAGE OF THE PROCEEDINGS WHERE HE WAS NOT PROVIDED WITH THE REQUISITE INFORMATION TO MAKE AN INFORMED DECISION AS TO WHETHER TO ACCEPT THE GOVERNMENT'S PLEA OFFER

**i. Deficient Performance**

It is well-established that "a defendant has the right to make a reasonably informed decision whether to accept a plea offer." *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992); *see also Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985) (voluntariness of guilty plea depends on adequacy of counsel's advice); *Von Moltke v. Gillies*, 332 U.S. 708, 721 (1948) ("Prior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered."). A petitioner has a Sixth Amendment claim when "the advice that he received was so incorrect and so insufficient that it undermined his ability to make an intelligent decision about whether to accept the [plea] offer." *Day*, 969 F.2d @ 43. With respect to the advice provided by counsel regarding plea offers, in general, "[a] criminal defendant has a right to expect at least that his [or her] attorney will review the charges with [the defendant] by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising" the option to plead guilty or to proceed to trial. *Smith v. United States*, 348 F.3d 545, 553 (6th Cir. 2003). Defense counsel also has a "critical obligation ... to advise the client of `the advantages and disadvantages of a plea agreement.'" *Padilla v.*

7

*Kentucky*, 559 U.S. 356, 370 (2010) (*quoting Libretti v. United States*, 516 U.S. 29, 50-51 (1995)). This means that defense counsel should inform a client about the "relevant circumstances" surrounding a potential plea, including the risks of declining a plea deal and proceeding to trial. *United States v. Herrera*, 412 F.3d 577, 580 (5th Cir. 2005). "A defendant cannot make an intelligent choice about whether to accept a plea offer unless he fully understands the risks of proceeding to trial." *Id.*

As the affidavit thoroughly illuminates, counsels McCants and Retureta failed to fulfill their Sixth Amendment duties to Petitioner during the plea negotiation stage. See Attachment @ ¶ 3-6. Specifically, neither attorney advised him of the applicable mandatory minimum and maximum penalties were for the charges, what the strength and weaknesses of the government's case were, *see Purdy v. United States*, 208 F.3d 41,45 (2d Cir. 2000), or how the Sentencing Guidelines would potentially apply if Petitioner was convicted---that is, how certain enhancements would affect his ultimate sentencing exposure. *See e,g, United States v. Gaviria*, 116 F.3d 1498, 1512 (D.C. Cir. 1997) (explaining an attorney's duty to familiarize themselves with the "basic content of the Guidelines" as a means of providing "effective representation").

Of equal significance, Retureta never informed Petitioner that his urban novels, which trafficked heavily in guns and drug culture, would be admissible under Rule 404(b) of the Federal Rules of Evidence as part of the Government's case against him. See Attachment @ ¶ 6; *see also United States v. Haight*, 892 F.3d 1271, 1277-78 (D.C. Cir. 2018) (noting that there was no abuse of abuse of discretion where the district court concluded that the defendant's handwritten lyrics and a handwritten script expressing his desire to sell narcotics in Lincoln

8

Heights were admitting during the trial under Rules 404(b) and 901 of the Federal Rules of Evidence).

For these reasons, and those in which Petitioner outlined in the affidavit, Petitioner was not provided with objectively reasonable advice during the plea negotiation stage of the proceedings as neither counsel fulfilled their "critical obligation... to advise the client of `the advantages and disadvantages of a plea agreement.'" _Padilla_, 559 U.S. @ 370; _see also Wofford v. United States_, 722 F. Supp. 2d 664, 689 (E.D. Va. 2010) (concluding that "counsel's incorrect and incomplete legal advice to [the petitioner] during the plea negotiation process was objectively unreasonable").

### ii. Prejudice

Where deficient advice results in a petitioner's rejection of a plea offer, the petitioner d must "show that but for the ineffective advice of counsel there is a reasonable probability . . . that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances[], that the court would have accepted its terms, and that the conviction or sentence or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." _Lafler_, 566 U.S. @ 164; _United States v. Knight_, 981 F.3d 1095, 1101 (D.C. Cir. 2020). The question here is whether, but for the deficient and objectively unreasonable advice rendered by both McCann and Retureta, there is a reasonable probability that the Government would have offered the 100-month plea offer, Petitioner would have accepted that plea offer and the District Court would have accepted the plea agreement's terms.

The burden of proof is relatively minimal. Petitioner does not have to show that it is more likely than not that he would have pleaded guilty but for the deficient performance of his attorneys during the plea negotiation stage of the proceedings.  Rather, he is only required to show that there is a reasonable probability that, with competent advice from counsel, he would have accepted the 100-month plea offer. *See Knight*, 981 F.3d @ 1101. Petitioner's sworn statement that he would have accepted the Government's 100-month plea offer and the actual disparity that exists between the plea offer and the 192-month sentence to which he received after trial is sufficient to demonstrate that that he would have accepted the 100-month plea offer had he been adequately advised.  *See Knight*, 981 F.3d @ 1103 (noting that significant disparity between the terms of the plea offer and the penalty by the defendant after conviction at trial is "contemporaneous evidence that Knight would have accepted the plea offer had counsel correctly apprised him of how favorable it was and of the sentencing exposure he would face if he declined the offer and went to trial."); *Smith*, 348 F.3d @ 552  ("[T]he disparity between the plea offer and the potential sentence exposure [is] strong evidence of a reasonable probability that a properly advised defendant would have accepted a plea offer"); *Mask v. McGinnis*, 233 F.3d 133, 142 (2d Cir. 2000) ("[A] large disparity between the defendant's sentence exposure following a trial and his potential exposure had a plea offer been made. . . . coupled with [defendant's] statements that he would have accepted a reasonable offer as credited by the district court, satisfies the prejudice requirement."); *United States v. Gordon*, 156 F.3d 376, 380 (2d Cir. 1998) (finding the disparity between the 84 months offered in the plea agreement and the actual sentencing range of 262 to 327 months as "sufficient objective evidence . . . to support a finding of prejudice under Strickland in plea

10

bargain context); *Boria v. Keane*, 99 F.3d 492, 497 (2d Cir. 1996) (holding that counsel was

deficient in failing to advise defendant that it was his professional judgment that it was wise to

take the plea offer because acquittal was "almost impossible" and that with competent advice

there is more than a reasonable probability that Boria would have decided "not to pursue the

suicidal course he seemed bent upon following.").

Finally, there is no evidence in the record that the government would have rescinded

the offer or that the District Court would not have accepted the offer. Hence, Petitioner has

established that he was prejudiced by the deficient performances of McCann and Retureta.

### iii. Remedy

"Sixth Amendment remedies should be `tailored to the injury suffered from the

constitutional violation and should not unnecessarily infringe on competing interests,'" *Knight*,

981 F.3d @ 1107 (citations omitted), and there is considerable discretion to fashion such a

remedy. *Id*. Although the remedy for a Sixth Amendment violation should not "grant a windfall

to the defendant or needlessly squander the considerable resources the State properly invested

in the criminal prosecution," it "must `neutralize the taint' of [the] constitutional

violation." *Id.* When a Sixth Amendment deprivation causes a defendant to reject "an offer ...

for a guilty plea to a count or counts less serious than the ones for which [he] was convicted" at

trial, "resentencing alone [based on the convictions at trial] will not be full redress for the

constitutional injury." *Id.* "In these circumstances, the proper exercise of discretion to remedy

the constitutional injury may be to require the prosecution to reoffer the plea proposal." *Id.*

Adhering to this principle, the proper remedy in this instance necessitates the government to reoffer the 100-month plea offer to Petitioner. *See Knight*, 981 F.3d @ 1108-09 (endorsing similar remedy where defendant established that the objectively unreasonable advice of counsel resulted in his decision to forego a plea offer).

### B. PETITIONER'S SIXTH AMENDMENT RIGHT TO EFFECTIVE REPRESENTATION WAS VIOLATED DURING THE DIRECT APPEAL BASED ON APPELLATE COUNSEL'S FAILURE TO ARGUE THAT THE GOVERNMENT'S INTRODUCTION OF THE LAB REPORTS WITHOUT THE TESTIMONY OF THE CHEMIST VIOLATED THE SIXTH AMENDMENT GUARANTEE OF CONFRONTATION

### i. Deficient Performance

The Supreme Court has made clear that in reviewing a lawyer's performance, a court's "scrutiny ... must be highly deferential." *Strickland*, 466 U.S. 689. A fair assessment of attorney performance requires that every effort be made "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* In relation to appellate counsel, the *Strickland* performance standard does not require an attorney to raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745,751 (1983). Indeed, the process of "`winnowing out weaker arguments on appeal and focusing on' those more likely to prevail ... is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (*quoting* Barnes, 463 U.S. 751-52). As the Supreme Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith*, 528 U.S. @ 289. In such

12

cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.* at 289.

In the instance case, the record makes manifest that the omitted issue----the Sixth Amendment Confrontation issue associated with the lab reports----was clearly a more significant and meritorious claim than appellate counsel presented. To be sure, at the time of the appellate proceedings the D.C. Circuit had confronted a similar issue in *United States v. McGill*, 815 F.3d 846 (D.C. Cir. 2016). There, the trial court admitted, inter alia, lab reports to establish the authenticity of certain controlled substances. Id. @ 890. More importantly, the government conceded that, in light of *Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527 (2009) and *Bullcoming v. New Mexico*, 131 S. Ct. 2705 (2009), the defendant's convictions for two substantive § 841 convictions should be reversed since the lab reports constituted the only evidence that established the "character and quantity of the substances in question." *Id.* @ 890.

Similar to the defendant in *McGill*, the government presented no other evidence to support Petitioner's substantive § 841 convictions but the lab reports. Moreover, the government was afforded the opportunity to call the chemist when the issue arose and the record was clarified that the defense had not stipulated to the introduction of the lab reports in lieu of testimony. Given the similarities in the two cases, had counsel pursued this issue the likelihood of success cannot be minimized.

By failing to raise the Sixth Amendment Confrontation issue on direct appeal, appellate "counsel was not functioning counsel was not functioning as `counsel' guaranteed the

13

defendant by the Sixth Amendment." *Strickland*, 466 U.S. @ 687. Thus, appellate counsel's

performance in opting to forgo a meritorious Sixth Amendment confrontation challenge was

objectively unreasonable. *See, e.g., Shaw v. Wilson*, 721 F.3d 908, 917-18 (7th Cir. 2013) (finding

Appellant counsel's performance objective unreasonable where non-frivolous claim was not

raised on direct appeal).

### ii. Prejudice

To establish prejudice under Strickland, Petitioner must demonstrate that it a

reasonable probability exist that, had his appellate counsel raised the issue on direct appeal,

the outcome of the proceedings would have been different---that is, the appellate court would

have concluded that the plain error standard had been satisfied if the Confrontation claim had

been raised. *See Strickland*, 466 U.S. 694.

The question of whether plain error was established hinged on application of the

Supreme Court's decision in *Bullcoming*. There, the Supreme Court held that a laboratory

report establishing the results of a blood-alcohol analysis was the material equivalent of the

certificates of analysis at issue in *Melendez-Diaz*. *See id.* at 2717. The Court summarized the

holding in *Melendez-Diaz* as applying to "[a] document created *solely* for an evidentiary

purpose ... made in aid of a police investigation." *Id.* (citation and internal quotation marks

omitted) (emphasis added). Because the blood-alcohol laboratory report was generated to

assist in a police investigation rather than for routine administrative purposes, it was deemed

testimonial. *See id.*

Relying on the *Bullcoming*, the government's position in *McGill* and the appellate court's apparent approval of the government's concession as to the Sixth Amendment error, Petitioner's substantive § 841 convictions surely would have been reversed on plain error grounds. The record therefore shows that Petitioner was prejudiced by appellate counsel's deficient performance. *See Payne*, 760 F.3d @ 17-18 (concluding that defendant prejudiced by appellate counsel's failure to raise non-frivolous claim on direct appeal).

Respectfully Submitted,

/s/_____
Anthony Fields

**CERTIFICATE OF SERVICE**

I certify that on this 17th day of April 2023, a copy of the 28 U.S.C. § 2255 Motion, Memorandum of Law, and Affidavit were affixed with sufficient U.S. First-Class U.S. postage and provided to prison legal mailroom staff for forwarding to the following party:

Office of the U.S. Attorney
555 4th Street, NW
Washington, DC 20530

/s/ *Anthony Fields*
Anthony Fields

IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

:

UNITED STATES OF AMERICA                          :

      v.                                              :          Criminal No. 18-00267 (APM)

ANTHONY FIELDS                                    :

1. I, Anthony Fields, the 'Affiant,' do hereby declare under the penalty of perjury that the hereinafter statements are true and correct to the best of my knowledge and recollection.

2. The Affiant was originally subjected to a 3-count indictment in the instant case. The indictment charged him with possession with intent to distribute heroin, in violation of 21 U.S.C. § 841; possession with intent to distribute PCP, in violation of 21 U.S.C. § 841; and possession with intent to distribute buprenorphine, In violation of 21 U.S.C. § 841.

3. The Affiant was originally represented by attorney Kevin McCants. While represented by McCants, the government extended a plea offer to the above charges of 100 months. In conveying the plea offer to Affiant---which occurred during a legal visit at approximately 1am on a weekday where the Affiant was (unexpectedly) roused from sleep and escorted to the legal visit, McCants merely informed him of the total term of months that the plea involved (100) and that if the plea was not accepted the government planned to file a superseding conspiracy charge. Throughout the very limited discussions that occurred between Affiant and McCants regarding the government's plea offer, he never advised the Affiant as to what charges the plea embodied, what the statutory minimum and maximum were for those charges versus what the Affiant's sentencing exposure would be had he proceeded to trial, the strength (or lack thereof) of the government's case or how the United State Sentencing Guidelines would potentially apply---including the potential applicability of certain enhancement(s)---had he proceeded to trial and how that would differ from the government's plea offer. Thus, based on the limited information that the Affiant received from McCants, he decided to reject the government's 100-month plea offer. Had the Affiant been so advised by McCants, he would not have proceeded to trial and would have instead accepted the government's plea offer.

4. After he rejected the government's plea offer and based on his dissatisfaction with McCants' representation, the Affiant requested new counsel. Consequently, attorney Manuel J. Retureta was appointed as counsel.

5. During this time, a superseding indictment was returned against the Affiant wherein charges were added. Also, in or about June 2018 he was transferred from DC Jail to Warsaw in Virginia. This move not only impeded the Affiant's ability to conduct any type of meaningful legal research regarding his charges, it also strained the attorney/client relation between him and Retureta as given the distance of the facility, Retureta was only able to visit a limited number of occasions---perhaps one or two. Between the infrequency of legal visits and the limited time to which he and Retureta spoke via telephone, the communication between the two dissolved to the point where Affiant complained to the Court and eventually requested that the Court remove Retureta from the case.

6. Prior to being removed from the case, Retureta's position was that the Affiant should not accept any type of plea that the government offered because the case against him was weak. To illustrate this weakness, he drew a picture which consisted of a circle. In the circle he jotted down symbols that were the barbershop, the drugs and the Affiant. He explained, that the picture was designed to illustrate that the government had not produced any evidence linking him to the barbershop such as a lease nor anything that could connect him to the drugs (no wiretaps, no DNA, no fingerprints) and that all they possessed was a key to an unnumbered room.

In or about August 2018, a video legal visit was arranged. Therein, Retureta mentioned that the government's plea offer---a plea offer that he never acknowledged prior to this video visit----was about to be rescinded and that they were in the process of filing a superseding indictment. At no point during this video visit, or any other time, did he explain the nature of the charges which formed the basis of the plea, what the statutory minimum or mandatory penalties were for those charges and what the Affiant's potential mandatory sentencing exposure would be if opted to proceed to trial and how the sentencing guidelines would potentially apply if he proceeded to trial---that is, how certain enhancements would apply and how that would affect the Affiant's sentencing exposure. Within the backdrop of this dearth of information, the Affiant once again declined to accept the government's plea offer. Had Retureta explained the above to the Affiant regarding the contrast in his sentencing exposure as it related to a loss at trial versus the plea offer, he would not have proceeded to trial and would have instead accepted the government's 100-month plea offer.

Of relevance, when Retureta did explain why he believed the government's case was weak, he was aware that the Affiant wrote urban novels and that they were rife with references to drugs and crime and that those references would be admissible at trial and would be used by the government but this point was omitted in his analysis of the government's case. Furthermore, he did not explain that the 2017 case from Prince George's County would be used by the government at trial or that criminal liability could attach for the guns found in the kitchen above the barbershop.

7. After the removal of Retureta, attorney Kira Ann West was appointed. The government had since rescinded their 100-month offer and filed a superseding Indictment

against Affiant charging him (and others) with a narcotics conspiracy, other substantive controlled substance offenses and a firearm offense.

8. While represented by West, the government offered the Affiant a 144-month plea offer shortly after it had conducted a reverse proffer and outlined its case against the Affiant. West also explained certain specifics of the plea offer. The Affiant ultimately opted to reject the government's 144-plea offer and proceed to trial.

9. Affiant was ultimately convicted of multiple offenses narcotic offenses and acquitted of several other firearm and narcotic offenses. The district court thereafter sentenced the Affiant to a term of 192 months imprisonment.

10. Had the Affiant been adequately advised by either McCants or Retureta in relation to the 100-month plea offer---that is, had he been informed of the strength of the government's case, the statutory minimum and maximum that the plea exposed him to versus a conviction after trial and how the sentencing guidelines would potentially apply if he were convicted at trial, he would not have proceeded to trial and would have instead accepted that 100-month plea offer.

I, _____, do declare on this 13th day of March 2023, under the penalty of perjury that the aforementioned statements are true and correct to the best of my knowledge and recollection.

3